IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| LARRY TYRONE WATKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 3:12-cv-00984 |
| v. ) | Judge Trauger / Knowles |
| ) | Jury Demand |
| CORRECTIONS CORPORATION OF ) | |
| AMERICA, et. al, ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**

**I. Introduction and Background**

This matter is before the Court upon a Motion for Summary Judgment filed by the only remaining Defendant in this action, Terry Kinnaman ("Defendant").[1] Docket No. 31. Along with that Motion, Defendant has filed a supporting Memorandum of Law, a Statement of Undisputed Material Facts, and his Affidavit with Exhibits, including a manually filed video DVD. Docket Nos. 32-36.

Plaintiff has not responded to Defendant's Motion or Statement of Undisputed Material Facts, nor has Plaintiff filed his own Statement of Undisputed Facts.

Plaintiff filed this pro se, in forma pauperis, action pursuant to 42 U.S.C. §1983, alleging that Defendant discriminated against him in violation of his Equal Protection rights, when Plaintiff (an African-American inmate) got into a physical altercation with a Caucasian inmate,

---

[1] Plaintiff originally sued Corrections Corporation of America, Terry Kinnaman, "Y. Bermudez," and "Chief Perry." Docket No. 1. Judge Trauger terminated Defendants Corrections Corporation of America, "Y. Bermudez," and "Chief Perry" as parties to this action in an Order entered November 26, 2012. *See* Docket No. 8. Accordingly, Terry Kinnaman is the only remaining Defendant in this case.

but Defendant (a Caucasian "ATU Manager") issued a disciplinary write-up for assault only to him, and not to the Caucasian inmate. Docket No. 1. Plaintiff argues that this disciplinary write-up for assault resulted in a loss of 45 days of good time credit, 45 days in segregation, and "later the CCA Committee took [his] visits for a policy they made up and not in policy book." *Id.* Plaintiff also contends that Defendant verbally harassed him when he was in segregation and called him "racist remarks." *Id.* Plaintiff seeks $2.5 million in compensatory damages, "proper job training" for Defendant, expungement of his disciplinary write-up, and being allowed to "finish R-DAP." *Id.*

Plaintiff does not indicate the capacity in which he sues Defendant; accordingly, Plaintiff is deemed to sue Defendant in his official capacity. *See, e.g., Lovelace v. O'Hara*, 985 F.2d 847, 850 (6th Cir. 1993); *Hardin v. Straub*, 954 F.2d 1193, 1199-1200 (6th Cir. 1992); *Wells v. Brown*, 891 F.2d 591 (6th Cir. 1989).

Defendant filed the instant Motion for Summary Judgment on June 12, 2013, arguing that it is entitled to a judgment as a matter of law because: (1) Plaintiff was not similarly situated to the Caucasian inmate because Plaintiff engaged in a violent act, while the Caucasian inmate refrained; and (2) Defendant did not act with a discriminatory purpose. Docket No. 31. As noted, Plaintiff has not responded.

For the reasons discussed below, the undersigned recommends that Defendant's Motion for Summary Judgment be GRANTED.

## II. Facts[2]

---

[2] The following facts are in a form required by Fed. R. Civ. P. 56, and are undisputed.

Defendant is employed by Corrections Corporation of America ("CCA"), a company that operates the Metro-Davidson County Detention Facility ("Detention Facility"), as the Director of the Residential Drug Abuse Program ("RDA Program") at the Facility. Docket No. 34, Affidavit of Terry Kinnaman (Def. Aff.), ¶ 2. As RDA Program Director, Defendant has the responsibility to manage policy and rule violations that occur within the RDA Program. *Id.*

Plaintiff is a prisoner of the State of Tennessee, confined at the Detention Facility since January 4, 2012. *Id.*, ¶ 3. Plaintiff entered the RDA Program at the Detention Facility on March 8, 2012, and signed an RDA Program Agreement Form on March 9, 2012. *Id.*, ¶ 4. In that RDA Program Agreement Form, Plaintiff expressly acknowledged that he would refrain from acts or threats of violence. *Id.*

Inmates who participate in the RDA Program are housed together in Unit Kilo. *Id.*, ¶ 5. Like Plaintiff, inmate David Sumner ("Sumner") also participated in the RDA Program. *Id.* On June 21, 2012, at 7:16 a.m., Plaintiff and Sumner sat near one another in an area of their residential unit devoted to group counseling. *Id.* Video footage provided to the Court captures the ensuing interaction between them. *Id.* Sumner somehow causes the chair in front of him to fall, so he stands up to reposition it. *Id.* In repositioning the chair, Sumner does not strike Plaintiff or commit a violent act against him. *Id.* Shortly thereafter, Plaintiff reaches across his body with his right hand and slaps Sumner across the face. *Id.*

In addition to the video footage, third-party witness statements also provide evidence of this interaction. *Id.*, ¶ 6. In his witness statement, inmate Bradley Warren states:

> At about 7:15 a.m. on Thursday (6/21/12), I saw Larry Watkins
> and Dave Summers arguing about something. I thought they were
> playing until I seen Larry Watkins slightly slap David Summers on
> his cheek and then Watkins said, "new we can go to the cell and

3

duke it out."

*Id., quoting* Witness Statement from Bradley Warren, attached as Ex. B.

In his witness statement, inmate Houston Grant states:

> I heard inmate D. Summers and L. Watkins having a dispute early in the morning, before morning meeting. They were having a dispute over something Inmate Watkins told D. Summers shut up he would slap him. But to me it didnt' seem serious or as if he was for real because I've heard both of them talk like that before to each other. So then told Watkins he can't play with everyone that way and told him stop. After that I walk off and got ready to attend morning meeting.

*Id., quoting* Witness Statement from Houston Grant, attached as Ex. C.

Plaintiff's June 23, 2012 and July 17, 2012 Informal Resolutions contain inconsistent versions of the events that transpired on June 21, 2012. *Id.*, ¶ 7, *referencing* attachments Exs. D and E.

CCA Policy 15-2, Disciplinary Procedures, instructs Detention Facility personnel on the appropriate manner in which to handle policy and rule violations. *Id.*, ¶ 8, *referencing* attachment Ex. F. CCA Policy 15-2 instructions Detention Facility personnel who understand that a policy or rule violation occurred and believe that the violation cannot appropriately be addressed through verbal communication to submit a written report to the Disciplinary Officer. *Id.* In response, the Disciplinary Officer hears the evidence, determines guilt or innocense, and imposes appropriate discipline. *Id.* Thus, once a Detention Facility employee submits a written report, a Disciplinary Officer is assigned to the case, and the reporting employee has no control over the outcome of the case. *Id.*

Defendant learned of the incident involving Plaintiff and inmate Sumner on June 21, 2012, and immediately began an investigation. *Id.*, ¶ 9. Defendant reviewed the video footage

from the residential unit where the assault occurred. *Id.* The video footage provided evidence of Plaintiff's violent act and inmate Sumner's absence of reciprocation. *Id.* Defendant obtained the witness statements quoted above. *Id.* Neither witness stated or implied that inmate Sumner struck or committed a violent act against Defendant. *Id.* Defendant also spoke to both Plaintiff and inmate Sumner regarding the incident. *Id.*

Based upon the investigation, Defendant concluded that Plaintiff had violated the assurance he provided in the RDA Program Agreement Form that he would refrain from acts or threats of violence. *Id.*, ¶ 10. Defendant also concluded that Plaintiff had violated CCA Policy 15-1, Offense and Penalty code, which expressly prohibits inmates from engaging in conduct that constitutes an assault, defined as an "attack upon the body of another person." *Id.*, *referencing* CCA Policy 15-1, attached as Ex. G. Therefore, in accordance with CCA Policy 15-2, Defendant reported Plaintiff's conduct to the Disciplinary Officer. *Id.* Once notified, the Disciplinary Officer made all decisions regarding Plaintiff's culpability and punishment. *Id.* Defendant neither made these decisions nor attempted to influence the Disciplinary Officer to inflict punishment upon Plaintiff. *Id.*

Defendant did not report inmate Sumner's conduct to the Disciplinary Officer because he did not have solid evidence that inmate Sumner violated a policy or rule. *Id.*, ¶ 11. The video footage did not indicate that inmate Sumner struck Plaintiff with a chair or otherwise engaged in any violent act against Plaintiff; and neither witness statement stated or implied that inmate Sumner struck Plaintiff, committed a violent act against Plaintiff, or engaged in conduct that violated policies or rules. *Id.* Defendant reached his decision not to report inmate Sumner's conduct to the Disciplinary Officer based solely on the evidence. *Id.*

5

Defendant did not level racial slurs against Plaintiff at any time during his incarceration. *Id.*, ¶ 9. No discriminatory motives influenced Defendant's decisions to report Plaintiff to the Disciplinary Officer, but not report inmate Sumner. *Id.*, ¶¶ 10, 11.

### III. Analysis

#### A.  Local Rules 7.01(b) and 56.01(c) and (g)

Local Rule 7.01(b) states, in pertinent part:

> **b.  Response.**  Each party opposing a motion shall serve and file a response, memorandum, affidavits and other responsive material not later than fourteen (14) days after service of the motion, except, that in cases of a motion for summary judgment, that time shall be twenty-one (21) days after the service of the motion, unless otherwise ordered by the Court.  Failure to file a timely response shall indicate that there is no opposition to the motion.

Defendant filed the pending Motion on June 12, 2013. Docket No. 31. Plaintiff has failed to respond to Defendant's Motion.

Additionally, with respect to Motions for Summary Judgment specifically, Local Rules 56.01(c) and (g) state, in pertinent part:

> **c.  Response to Statement of Facts.**  Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either (i) agreeing that the fact is undisputed; (ii) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (iii) demonstrating that the fact is disputed.  Each disputed fact must be supported by a citation to the record. ...
>
> . . .
>
> **g.  Failure to Respond.**  Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these Rules shall indicate that the asserted facts are not disputed for the purposes of summary judgment.

Plaintiff has failed to respond to Defendant's Concise Statement of Undisputed Facts.

Pursuant to Local Rule 56.01(g), Plaintiff's failure to respond indicates "that the asserted facts are not disputed for the purposes of summary judgment." Accordingly, there are no genuine issues as to any material fact and all that remains to be determined is whether Defendant is entitled to a judgment as a matter of law.

**B. Motion for Summary Judgment**

It would be inappropriate to grant Defendant's Motion solely on the ground that Plaintiff has failed to respond. *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998). As the Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded. The Court is required, at a minimum, to examine the movant's Motion for Summary Judgment to ensure that he has discharged [his initial] burden ... The federal rules require that the party filing a Motion for Summary Judgment "always bears the burden of demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted). The Court will, therefore, consider whether Defendant has met its burdens under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential

7

element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

### C. 42 U.S.C. § 1983 and Equal Protection Clause

Plaintiff alleges general violations of his Equal Protection rights pursuant to 42 U.S.C. § 1983. *See* Docket No. 1. Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988), *citing Parratt v. Taylor,* 451 U.S. 527, 535 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155 (1978). The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255, *quoting United States v. Classic,* 313 U.S. 299, 326 (1941).

The Equal Protection Clause proscribes that "No State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV. It essentially directs that all persons similarly situated should be treated alike, and it prohibits discrimination by government which burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *See, e.g., City of Cleburne, Texas v. Cleburne Living Center,* 473 U.S. 432, 439 (1985); *EJS Properties, LLC v. City of Toledo*, 698, F.3d 845, 864 (6th Cir. 2012); *Loesel v. City of Frankenmuth*, 692 F.3d 452, 461 (6th Cir. 2012); *Rondigo, LLC v. Township of Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011). In order to prevail on his Equal Protection claim, therefore, Plaintiff must demonstrate that: (1) he was similarly situated to the Caucasian inmate; and (2) Defendant acted with discriminatory purpose. *McCleskey v. Kemp*, 481 U.S. 279, 292-93 (1987).

**D. The Case at Bar**

As an initial matter, Plaintiff sues Defendant only in his official capacity. Defendant is employed by CCA, as the Director of the Residential Drug Abuse Program at the Detention Facility. As such, a suit against him in his official capacity is a suit against CCA. *See, e.g., Claybrook v. Birchwell*, 199 F.3d 350, 355 n.4 (6th Cir. 2000) (*citing Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). *See also, Frost v. Hawkins County Bd. of Educ.*, 851 F.2d 822, 827 (6th Cir. 1988). Accordingly, the undersigned must analyze whether CCA is entitled to summary judgment.

CCA is a private corporation that contracts with the State to operate penal facilities. A private entity that contracts with the State to perform a traditional state function, such as operating a penal facility, acts under color of state law and may be sued under § 1983. *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993); *Street v. Corrections Corp. of America*, 102 F.3d 810, 814 (6th Cir. 1996). Thus, CCA is amenable to suit under § 1983.

Section 1983, however, does not permit the imposition of liability based upon *respondeat superior*. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981). In order for CCA to be held liable, Plaintiff must plead allegations, *inter alia*, that an "official policy or custom was adopted by the official makers of policy with 'deliberate indifference' towards the constitutional rights of persons affected by the policy or custom." *City of Canton v. Harris*, 489 U.S. 378, 387-88 (1989). *See also, Monell v. Dept. of Soc. Serv.*, 436 U.S. 658, 690-91 (1978) (In order to find a governmental entity liable, Plaintiff must establish that (1) he / she suffered a deprivation of a constitutionally protected interest, and (2) the deprivation was caused by an official policy, custom, or usage of the local governmental entity.).

Plaintiff in the case at bar does not contend that any official CCA policy or custom

caused the alleged deprivation of his rights. Because Plaintiff does not allege, much less establish, that the alleged violations of his rights were caused by an official CCA policy, custom, or usage, he cannot sustain his claim, and Defendant is entitled to a judgment as a matter of law.

To the extent that Plaintiff intended to sue Defendant in his individual capacity as well, Plaintiff would be unable to prevail on that claim, because it is undisputed that: (1) Plaintiff was not similarly situated to the Caucasian inmate because Plaintiff engaged in a violent act, while the Caucasian inmate did not; (2) Defendant acted appropriately pursuant to CCA Policy and Procedures; and (3) Defendant did not act with discriminatory purpose or animus. *See, e.g., McCleskey, Loesel,* and *Rondigo, supra.*

Additionally, as has been discussed, Plaintiff contends that this disciplinary write-up for assault resulted in a loss of 45 days of good time credit, 45 days in segregation, and a loss of his visits, and Plaintiff seeks the expungement of this disciplinary write-up from his record. Docket No. 1. With regard to § 1983 liability in this context, the Supreme Court held:

> In order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Heck v. Humphrey*, 512 U.S. 477, 486-487, 114 S. Ct. 2364, 2372 (1994).

As noted, "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." *Heck*, 512 U.S. at 486-487.

Plaintiff has not shown that his disciplinary conviction has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." In fact, Plaintiff expressly seeks the expungement of the disciplinary write-up from his record. Because a judgment in Plaintiff's favor would necessarily imply the invalidity of his disciplinary conviction, Plaintiff cannot prevail.

### IV. Conclusion

For the forgoing reasons, the undersigned finds that there is no genuine issue of material fact and that Defendant is entitled to a judgment as a matter of law. Accordingly, the undersigned recommends that Defendant's Motion for Summary Judgment be GRANTED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any

response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge